Booth v. Smith.

<hr />

CALEB H. BOOTH

v.

JOSEPHINE C. SMITH.

CHANCERY.—A complainant must recover, if at all, upon the case made by his bill. A decree which, instead of attempting to apply any of the remedies given by law in cases of fraud, transforms what the bill alleges and the court finds to be a mere representation, into a contract or warranty, and then decrees its specific performance, is erroneous.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding. Opinion filed June 25, 1884.

This was a suit in chancery, brought by Josephine C. Smith against the Western Indiana Coal Company, Oliver H. Parsons and Caleb H. Booth. The bill alleges that in March or April, 1883, said Parsons, being the president of the Western Indiana Coal Company, a corporation organized and existing under the laws of this State, made to the complainant's husband and agent certain representations in relation to said company and to a certain coal mine which said company then owned, situated at Newport, Indiana, to the effect, among other things, that said company was successfully working said mine and paying its current expenses out of the proceeds of the coal taken therefrom; that the product of the mine could readily be increased to fifty tons per day, when the mine would pay a large profit to its operators; that the coal taken therefrom was worth twenty-five cents per ton more than any coal mined in the State of Illinois; that said coal could be mined and placed on the cars at the mine at a cost of not to exceed $1.27 per ton; also that there had then been invested by the stockholders of said company, in the mine and in the purchase of the property which said company had in its possession, the sum of $3,500, and that the value of the property belonging to the company was $20,000, its indebtedness being not over $1,500.

The bill further alleges that, relying upon and believing said representations, the complainant, by her said agent, entered into a written agreement with said Parsons, whereby she agreed to purchase of him 392 shares of the capital stock of said company, and to pay therefor the sum of $4,000, of which $500 was to be paid to said Parsons as a bonus, and the remaining $3,500 to the company, $1,500 to be used to pay the existing indebtedness of the company, and $2,000 in the business of the company as it should be required; that said representations were false and known to said Parsons to be false at the time they were made, the fact being that said

Booth v. Smith.

coal was worth at least twenty-five cents per ton less than Illinois coal; that said mine, instead of paying expenses, was being run at a loss of $20 per day, and had never paid current expenses; that the cost of mining said coal and placing it on the cars at the time, instead of being only $1.27 per ton, was at least $1.88 per ton; that instead of the stockholders having invested $3,500 in said company, they had invested in it not more than $2,000, and that the assets of said company were worthless.

It is further alleged that by reason of said false representations the complainant was deceived and defrauded out of said sum of $4,000, and that she received no consideration therefor, said shares of stock being only made valuable by her payment to said company; that although by the terms of said agreement said Parsons was to sell to her said shares of stock, they were held by one J. J. Kelly for and in the interest of said company and its stockholders, and said agreement was made for and in the interest of said company and its stockholders, except as to the $500 paid to said Parsons as a bonus; that after the purchase of said stock by the complainant, said mine was worked until May 15, 1883, at a loss of $25 per day, since which time it has not been operated; that there is no possibility of its being worked except at a loss which will eventually make the company insolvent; that the company has already lost in its business about $1,000; that its capital stock consists of 800 shares of the par value of $25 each, of which complainant is the owner of 391 shares and her said agent of one share; that the treasurer of the company delivered to said Parsons, its president, a check for $534.11 to be deposited in the company's bank to its credit, but that instead of so depositing it he delivered to defendant Booth, upon a pretended claim against the company; that said Booth, who appears to be the holder of 386 shares of the stock of said company, claims to be a creditor of said company in the sum of $2,000, and has brought his suit against said company in the Circuit Court of Cook county for the recovery thereof; that said claim is wholly without any legal or equitable foundation, but that a majority of the board of directors of said company are

wrongfully colluding with said Booth to allow a judgment to be rendered in Booth's favor for the amount of said claim without any defense, and to exhaust all the existing assets of the company in its payment; that the complainant is willing and offers to assign to the company, under the direction of the court, all the said shares of stock issued to her.

The bill prays that an accounting be taken in the premises, and that said company and said Parsons be decreed to pay to the complainant the sums of money found to be due from them respectively; that said Booth be decreed to refund said sum of $534.11 paid him by said Parsons; that a receiver be appointed, and said Booth be enjoined from further prosecution of his suit, and the officers of said company from paying his said claim or from interfering with the assets of the company, and also a general prayer for relief.

The answer denies that Parsons made the representations alleged in the bill, or that the complainant was induced by such representations to purchase said shares of stock, and alleges that her agent made full investigations of the facts for himself before purchasing, and purchased solely upon his own personal knowledge and judgment. It also alleges, among other things, that said mine and all the property of said company was purchased with money furnished by said Booth, and that he was the actual owner of 778 shares of its capital stock, and that said Parsons, acting as his agent, sold to complainant 392 shares of said stock for $4,000, with the understanding that $3,500 of that sum should be loaned to the company and charged to it on its books, one half of the same to be credited to Booth and one half to the complainant, the fact being that the complainant was really to pay only $1,750 for said stock and to loan an equal amount to the company, said Booth also loaning to the company the said amount received by him for said stock, and that the entries were made upon the books of the company in accordance with that agreement.

A receiver was appointed who took possession of the assets of the company and converted the same into cash, and after paying its indebtedness, reported to the court a cash balance

in his hands of $883.08. On the final hearing on bill, answer, replication and proofs, the court found the equities of the case to be with the complainant, but found in substance, that the allegations in the bill of fraudulent representations by said Parsons were not supported by the proofs, except the representation that there had been invested by the stockholders of the company in the company's mine and property the sum of $3,500; that there had been invested in said mine and property a gross sum of only $3,024, from which should be deducted the sum of $714.70, the proceeds already derived from the mine, leaving a deficiency between the actual amount invested and the amount represented of $1,190.70, and the court thereupon found that said Booth was indebted to said company in said sum of $1,190.70. The decree also found that said sum of $574.11 had been wrongfully paid by Parsons to Booth and that Booth was indebted to the company for that sum; also, that upon payment by said Booth to said company of the sums above mentioned, his proportion of the funds of the company as the owner of 386 shares of its capital stock would be $1,279.56, leaving a balance due the company from him over and above his proportion of the assets of the company of $485.24. It was accordingly decreed that said company be dissolved and that said Booth pay said company said sum of $485.24 within twenty days, and in default of such payment, that execution issue therefor. Also, that the assets of the company be distributed among the shareholders, exclusive of said Booth, according to the number of shares by them respectively held, and that said Booth pay the costs of the suit.

From this decree said Booth has appealed to this court.

Messrs. McConnell & Rogers, for appellants.

Messrs. Cratty, Abbott & Johnson, for appellee.

Bailey, J. It is a rule so familiar as to need no illustration that a complainant must recover, if at all, upon the case made by his bill. Applying that rule, we are unable to see how the decree in this case can be sustained.

The only allegations in the bill upon which any relief as against the appellant can be based, are 1, the wrongful payment to him by Parsons of $534.11 of the company's money, and 2, an attempt on his part to enforce by suit an unfounded and unjust claim against the company for $2,000. Various false and fraudulent representations are charged to have been made by Parsons, the president of the Western Indiana Coal Company, to the complainant's agent, but it is nowhere charged that any such representations were made by the appellant, or that Parsons, in making them, acted or was authorized to act as his agent, or that any such relations existed between Parsons and the appellant as would make the appellant in the slightest degree responsible for Parsons' acts. The decree, however, after finding that Parsons represented that the stockholders of the company had invested $3,500 in the mine and property of the company, and that such representation was false to the extent of $1,190.70, charged the appellant with such deficiency and required him to make it good to the company. To this extent the decree is a clear departure from the case made by the bill.

But if the bill had been so framed as to make the appellant responsible for Parsons' fraudulent representations, it is difficult to see upon what principle the decree could be sustained even in that case. If the complainant, relying upon the false and fraudulent representations of the appellant or his agent, was induced to purchase 392 shares in the capital stock of the company, she would doubtless have been entitled, on discovering the fraud, to rescind the contract of purchase and recover back the purchase money, or perhaps without rescinding, she might have maintained her action at law against the appellant for the fraud, and recovered such damages as she may have sustained by reason thereof. The decree, however, instead of attempting to apply any of the remedies given by law in cases of fraud, transforms what the bill alleges and the court finds to be a mere representation, into a contract or warranty, and then decrees its specific performance. This seems to us to be a species of relief which, under the pleadings and evidence in this case, is unwarranted.

Booth v. Smith.

We are unable, as the pleadings stand, to express any opinion as to the merits of the controversy between these parties. The case seems to have been tried upon a theory entirely different from any one properly arising from the averments of the bill. We are compelled, therefore, to reverse the decree and remand the cause for further proceedings, so that by suitable amendments to the pleadings, the merits of the controversy may be properly presented on another hearing.

Several cross-errors have been assigned by the appellee, which we will consider briefly. The first is, that the court erred in refusing to enter a decree against the appellant for $3,500, the entire amount paid by the appellee for said share of stock. Without pausing to discuss the evidence bearing upon this question, it is sufficient to say that no case for such a decree is made by the bill. There is no claim or allegation in the bill that appellee purchased said stock from appellant, or that appellant received or had the benefit of the money paid therefor, or that he was in any way responsible for the representations by which appellee was induced to make the purchase. So far as the bill shows, the appellant was an entire stranger to the transaction. Under these circumstances a decree against him for the purchase money would have been manifestly erroneous.

Again, it is claimed that the court erred in its decree as to the amount of money which the stockholders had invested in the company's mine and property; and also in finding against the appellee as to all the other false representations charged in the bill. The questions here raised are questions of fact upon which the evidence is conflicting, and upon which we prefer to express no opinion, since the case must be heard again in the court below. Furthermore, as the bill is framed, such finding, so far at least as the appellant is concerned, is immaterial.

The remaining cross-error assigned, viz., that the court erred in refusing to decree the repayment by Parsons of the $500 paid to him as a bonus, necessarily involves a consideration of evidence which, as we have said, is conflicting, and upon which it would be unwise for us to express an opinion.

For the errors above pointed out, the decree will be reversed and the cause remanded.

Decree reversed.